38202-86949- RER

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

**JAMES T. MORRISON and**
**SHIRLEY J. MORRISON**

    **Plaintiffs,**

VS.                                                      NO. 19-CV-00011
                                                              JURY DEMANDED

**HARLEYSVILLE WORCESTER INSURANCE**
**COMPANY,**

    **Defendant.**

---

### DEFENDANT'S MEMORADUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Comes now Defendant Harleysville Worcester Insurance Company, (hereinafter referred to as "Harleysville"), by and through counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and in support of its Motion for Partial Summary Judgment states as follows:

### STATEMENT OF FACTS

The property at 738 Parkway, Gatlinburg, Tennessee, which includes a retail building, is owned by the Plaintiffs. Harleysville Worcester Insurance Company issued Policy # SPP00000090328T with policy period from 08/01/2016 to 08/01/2017, pertaining to property located at 738 Parkway, Gatlinburg, Tennessee. During November, 2016, wildfires occurred in Sevier County, Tennessee during November, 2016 and the Plaintiff's building located at 738 Parkway, Gatlinburg, Tennessee, was exposed to smoke and/or soot.

1

Michael Capell is employed by Harleysville as a Commercial Claims Associate. The insurance claim, which is the subject of this lawsuit, was first reported by the Plaintiffs to the Harleysville on July 11, 2017. On July 11, 2017, Mr. Morrison told Michael Capell that he did not notice any damage to the building until it was pointed out to him and that there was staining on the cedar siding and the rubber roof. Mr. Morrison also stated the tenants of the property are responsible for the interior and he only wanted Michael Capell to inspect the exterior and the attic area. Mr. Morrison asked Michael Capell to call a friend of his, Eric Cooper, to schedule the inspection of the property as the he was leaving for Alaska and would not be back until August 2.

On July 12, 2017, Michael Capell received a call from Public Adjuster Anthony G. with Claims R Us who stated he had been hired by Mr. Morrison and he was asked to call Michael Capell by Eric Cooper. Anthony, the public adjuster indicated that the scope included exterior cleaning and roof damage. Anthony also stated the tenants were responsible for the interior.

On July 14, 2017, Michael Capell met with the Claims R Us public adjuster and his assistant at the loss location. Mr. Capell's inspection of the exterior of the building showed minor soot on some of the chemical sponge tests, but it was mostly dirt. The Plaintiffs' public adjuster agreed that all that was needed was a pressure wash cleaning. Michael Capell calculated the cleaning cost. The roof inspection of the TPO showed no damage. Some of the roof vents were dirty, but there was a newer unit with no soot. It appeared to Michael Capell that this was old dirt and soot was from the cooking vent. The only damage identified was the middle main gable. There were a few missing shingle tabs on the front middle gable dormer and the rear gable. There was a patch

also on the front. The Plaintiffs' public adjuster could not say when this occurred as there had been several storms in the area over the last few years and he had no idea when the patch on the front was done. There was no access to the attic at this time, but due to the amount of smoke known to have been in the area Michael Capell included in the estimate a thermal fog in the attic. The tenants that Michael Capell spoke with had no complaints of odor.

On July 14, 2017, Michael Capell discussed the scope of the repairs with the public adjuster and emailed his estimate to Mr. Morrison and the public adjuster and sent a check in the amount of $1,774.54 to Mr. Morrison.

On November 28, 2017, Michael Capell called Mr. Morrison who stated that the public adjuster told him there was more damage and that is why he did not cash the check.

On December 18, 2017, Michael Capell received an email from Claim R Us stating that they no longer represented Mr. Morrison.

On February 21, 2018, the Defendant received an email from Chuck Howarth, CPU, with the Howarth Group, Franklin, Tennessee, that stated that Claims R Us no longer represented Mr. Morrison and that Mr. Morrison requested that the appraisal clause of the policy be invoked on damages. Michael Capell called and left a message for Mr. Howarth to call back as he had no idea what the Plaintiffs were claiming for damages.

During the period from February 27, 2018 to July 27, 2018, Michael Capell had numerous communications with Mr. Howarth in which Michael Capell inquired about the

3

status of the documentation of concerning his evaluation and estimate of the alleged additional damages.

On July 27, 2018, Michael Capell received an email from the Mr. Howarth, on behalf of the Plaintiffs, providing his estimate in the amount of $350,801.06 and a report from Forensic Building Science ("FBS") describing the presence of char, ash, and soot in the building.

On August 16, 2018, GHP Environmental performed its inspection of the property at the request of the Harleysville. The GHP Environmental report states in part as follows:

> GHP performed initial investigations and sampling at the site on August 16, 2018. The goal of the visual inspection and investigation was to determine extent of any forest fire related soot, char, and ash infiltration that potentially affected the stores in the multi - retail center at the site. Based on visual assessment it was not apparent that there was any significant forest fire residue present after the November 2016 fire event. GHP would consider forest fire residue (char, ash, and soot) detection of less than 1% as background levels for these particles. Forest fires were noted in the immediate areas around Gatlinburg during the November 2016 fire event. Smoke and high winds were confirmed throughout Gatlinburg during that time. No prevalent smoke odor within the structure was noted during the investigation. Initial sampling that was performed on August 16, 2018, indicated no significant presence of Char, Ash or Black Carbon / Soot. All samples were at non-detect (ND) or less than one percent (<1%) for Char, Ash, Black Carbon / Soot, and Carbon Black, which is at the limit of detection and should not be considered a significant amount of fire residue. These levels should be considered as normal background levels, being at the limit of detection and in our opinion, pose no risk to the building or occupants. Samples were sealed in sample bags and sent to EMSL laboratories with accompanying chain of custody form for microscopic examination.

Two additional tape lift samples were collected from a roof top condenser unit

and from an air supply diffuser in the Pizza Hut store. Both samples were collected from surfaces that exhibited dark staining that may have been assumed to be staining from forest fire by-product residue. Results of the tape lift analysis for fungal components indicated moderate to heavy levels of Cladosporium fungal species. Wipe samples from the same two areas did not detect any char, ash, or soot particles on the condenser unit and <1% char on the supply diffuser.

On October 10, 2018, Harleysville advised the plaintiffs, "We have received the report from GHP Environmental which is negative for smoke. We have attached a copy to this email. As the results are negative, your supplement for additional damages is not approved and the claim is being closed again."

## LAW AND ARGUMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In considering a motion for summary judgment, [a court] must draw all reasonable inferences in favor of the nonmoving party." Phelps v. State Farm Mut. Auto. Ins. Co., 680 F.3d 725, 730 (6th Cir. 2012) (citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). While the court views all evidence and factual inferences in a light most favorable to the non-moving party, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

The movant has the initial burden of "demonstrat[ing] the absence of a genuine

5

issue of material fact." Celotex, 477 U.S. at 323. The burden then shifts to the non-moving party to "go beyond the pleadings" and "designate specific facts showing there is a genuine issue for trial." Id. at 324. Ultimately, in evaluating the appropriateness of summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

**The Court Should Dismiss Plaintiff's Claim for Violation of the Bad Faith Statute.**
**Because Defendant's Coverage Decision Was Made in Good Faith.**

The Court should dismiss the Plaintiff's claim for Defendant's alleged violation of the bad faith statute, Tenn. Code Ann. § 56-7-105, being Count 2 of the First Amended Complaint (Doc. 21). The bad faith statute, Tenn. Code Ann. § 56-7-105(a), provides that:

> The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest on the bond, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that the failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy or fidelity bond; and provided, further, that the additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury including attorney fees thus entailed.

In order to recover bad faith penalties, a plaintiff must prove that the policy of insurance had, by its terms, become due and payable. Ginn v. American Heritage Life Ins. Co., 173 S.W.3d 433, 443 (Tenn. Ct. App. 2004). The plaintiff must then prove they made a formal demand for payment and thereafter waited sixty (60) days after making

6

the demand before filing suit. Id. Lastly, the plaintiff must prove that the refusal to pay was made in bad faith. Id. Because the statute is penal in nature, the insurer is entitled to sufficient notice in the demand for payment that a claim for bad faith will be made. PanTech, Inc. v. Auto-Owners Ins. Co., 292 S.W.3d 1, 9 (Tenn. Ct. App. 2008). The Tennessee Supreme Court has stated that delay in settling a claim "does not constitute bad faith when there is a genuine dispute as to value, no conscious indifference to the claim, and no proof that the insurer acted from 'any improper motive.'" Palmer v. Nationwide Mut. Fire Ins. Co., 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986) (citing Johnson v. Tennessee Farmers Mutual Ins. Co., 556 S.W.2d 750, 752 (Tenn. 1977)).

An insurer has the right to assert the defenses available to it if made in good faith. Id. "If an insurance company unsuccessfully asserts a defense and the defense was made in good faith, the statute does not permit the imposing of the bad faith penalty." Id. (quoting Nelms v. Tennessee Farmers Mut. Ins. Co., 613 S.W.2d 481, 484 (Tenn. Ct. App. 1978). In Palmer, the court of appeals reversed a jury's imposition of the bad faith penalty. Id. In that case, the plaintiffs suffered a fire loss to their home. The proof showed that on the night of the fire, two separate fires occurred. Id. The fire chief testified at trial that the second fire had up to fourteen (14) separate points of origin. Id. at 127. The State Deputy Fire Marshall testified that he investigated the premises and determined arson as the cause of the second fire. Id. Based upon this information, the insurer denied the claim. Id. Based upon this proof, the court of appeals stated that "[t]he record is devoid of any proof which would warrant a bad faith penalty, and the court was in error in affirming the jury award of the penalty." Id.

In a recent decision, the Tennessee Court of appeals noted in the context of an

7

arson case that the insured was not entitled to bad faith damages where the insured hired an independent adjuster, electrical engineer and origin and cause investigator. In that case, the fire was determined to be arson and there was proof of financial difficulties on the part of the insured. This was sufficient to establish a good faith basis for denial. Lance d/b/a J&B Discount v. Owner's Insurance Company, E2015-00274-COA-R3-CV (Tenn. Ct. App. E.D. May 25, 2016). As one court noted, "[t]o sustain a claim for failure to pay in bad faith a plaintiff must demonstrate that there were no legitimate grounds for disagreement about the coverage of the insurance policy." Fulton Bellows, LLC v. Fed. Ins. Co., 662 F.Supp.2d 976, 996 (E.D. Tenn. 2009) (internal quotation and citations omitted).

In Williamson v. Aetna Life Insurance Company, 2005 WL 3087861 (W.D. Tenn. Nov. 17, 2005), the District Court for the Western District of Tennessee faced a similar issue on a defendant's motion for summary judgment. In that case, the plaintiff sought damages under both the Tennessee Consumer Protection Act and the Bad Faith Penalty Statute. Id. at *1. Plaintiff claimed that the defendant insurer acted in bad faith in requiring her to submit proof of her disability and thereafter terminating her benefits. Id. The plaintiffs provided the court a laundry list of more than 180 claims alleged to have been filed over a five year period that were allegedly wrongfully denied by the insurer. Id. at 5. The plaintiff additionally argued that the insurer unreasonably requested proof of her disability on numerous occasions even after she had previously provided the requested information. Id. The Williamson court granted the insurer's motion for summary judgment on Plaintiffs' bad-faith statutory claim. Id. at *8. The court first noted the proof required to make out a claim under the statute. Id. at *7. Next, the court stated that the insured

8

Case 3:19-cv-00011-JRG-DCP   Document 35   Filed 01/06/20   Page 8 of 15   PageID #: 606

bears the burden of proof with regard to the four requirements. Id. The court additionally stated that "[a] penalty is not appropriate when the insurer's refusal to pay rests on legitimate and substantial legal grounds." Id. (quoting Tyber v. Great Central Ins. Co., 572 F.2d 562, 564 (6th Cir. 1978)).

In Williamson, the defendant insurer specifically based its summary judgment motion on the fourth prong of required proof that states that the insurer's "refusal to pay was not in good faith." Id. As with the plaintiffs' TCPA claim, the court reviewed the applicable facts of the case and noted that the plaintiffs were unable to offer evidence that the insurer acted in any manner which could be considered bad faith. Id. at *8. Specifically, the court noted that the insurer acted reasonably in requesting proof of disability status as the plaintiff's living arrangements, school status and location of residence changed from the first of such requests to the request complained of by plaintiffs. Id. The court found that the insurer's reliance on those facts provided a reasonable basis for requesting proof of her status as fully disabled. Id. Further, the court noted that the plaintiff provided no basis for the assertion that the insurer denied various claims in bad faith. Id. at *7. In fact, the court noted that the insurer provided evidence of its various bases for denial of those claims. Id. Based upon these findings, the court held as a matter of law that the defendant insurer did not act in bad faith under the statute, and did not violate the TCPA, and therefore granted the defendant's motion for summary judgment. Id. at *8.

Further, in Powell v. Nationwide, a case from the Middle District of Tennessee, Judge Samuel Mays encountered a similar issue and concluded that an insurance company acted reasonably and not in bad faith when it relied on the report of its expert

to deny its insured's claim. (Order attached hereto as **Exhibit A**). In that case, the insured claimed that his house had been damaged by a sinkhole and filed suit, including a bad faith claim, when the insurer denied the claim. Id. The insurer had, however, relied on the report of its expert that had gone out to investigate the loss. Id. Because the insurer had engaged the expert and relied on his findings, the Court held that the insurer had acted reasonably and not in bad faith in denying the claim. Id.

In a similar case from the Western District of Tennessee, Cox v. Erie Insurance Exchange, Judge Daniel Breen addressed this issue. (Order attached hereto as **Exhibit B**). The plaintiff homeowner made a claim against his Erie Insurance Exchange policy for hail damage to his roof that had allegedly occurred five months earlier. Erie inspected the damage and determined that the roof did not suffer significant damage as a result of the hail. After subtracting the plaintiff's $1000 deductible from its estimate, Erie issued its check in the amount of $122.39 to the plaintiff/homeowner. Subsequently, Erie and hired Steven Pace, P.E. to inspect the homeowner's roof. Engineer Pace determined that the roof was not damaged as a result of hail. Plaintiff hired Prosser and Associates to inspect the roof and it found significant wind and hail damage to the roof as well as damage to the brick and driveway coatings and window cladding. The court granted Erie's motion for partial summary judgment on the issue of bad faith stating that the plaintiff did not, as he must, present evidence that Erie's investigation was unreasonable, dishonest, or fundamentally illegitimate. The court found that the investigation by the engineer hired by the insurer supported an honest and good faith belief that the extent of the damage to the property was not as extensive as the homeowner claimed. Moreover, the insurer's prompt engagement of an engineer to investigate the claim indicated that the defendant was not

consciously indifferent to plaintiffs' interest. Therefore, the court granted summary judgment on the issue of bad faith.

**The Court Should Dismiss Plaintiff's Claim for Punitive Damages Because Defendant's Coverage Decision Was Made in Good Faith**

The Court should dismiss the Plaintiff's claim for punitive damages, being paragraphs 48 and 49 of the First Amended Complaint (Doc. 21), because Defendant's coverage decision was made in good faith and does not constitute an intentional, fraudulent, malicious or reckless act. In Riad v. Erie Ins. Exchange, 436 S.W. 3d 256 (Tenn. App. 2013), the Court of Appeals stated:

> Punitive damages, while generally "not available in a breach of contract case," may be awarded in a breach of contract action under "certain circumstances." *Rogers v. Louisville Land Co.,* 367 S.W.3d 196, 211 n. 2 (Tenn.2012) (citations omitted). To recover punitive damages, the trier of fact must find that a defendant acted either intentionally, fraudulently, maliciously, or recklessly. *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896, 901 (Tenn.1992).

Punitive damages are allowed in only "the most egregious cases," Rogers v. Louisville Land Co., 367 S.W.3d 196, 211 n.14 (Tenn. 2012), and only if there is "clear and convincing evidence" that the defendant has acted "either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Term. 1992). "A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result." *id.* "A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *id.* Evidence of this conduct is clear and convincing when it leaves "no serious or substantial doubt about the correctness of the conclusions drawn." *Id.*

11

Summary Judgment should be entered for Harleysville on the Plaintiff's claim for punitive damages for substantially the same reasons as the claim for statutory bad faith - Harleysville issued its denial with a good faith basis to support it.

**Good Faith Investigation**

Defendant Harleysville promptly conducted an investigation into Plaintiff's damages allegedly caused by the wildfire despite receiving late notice of the claim from the insured approximately eight months after the occurrence of the wildfire. Notice of the claim was received on July 11, 2017 and Michael Capell, Commercial Claims Associate, contacted Plaintiff James Morrison that day. Michael Capell then set up a meeting with Mr. Morrison's public adjuster, Claims R Us, at the property to inspect the loss and determine the scope of damages in order to prepare an estimate. Based on that inspection and his discussions with the public adjuster, Mr. Capell issued a check in the amount of $1774.54 to Mr. Morrison on July 14, 2017.

Approximately four months later, on November 28, 2017, Mr. Morrison advised Mr. Capell that he had not cashed that check because the public adjuster told him there was more damage. On February 21, 2018, about three months later, Mr. Capell received an email from Chuck Howarth stating that Claims R Us no longer represented the Plaintiffs and invoking the appraisal clause of the policy. Mr. Capell called Mr. Howarth and left a message for a call back because he had no idea what the Plaintiffs were claiming for additional damages. Not until July 27, 2018 did the Plaintiffs provide Mr. Howarth's estimate in the amount of $350,801.06 and a report from Forensic Building Science ("FBS") describing the presence of char, ash, and soot in the building.

In response, Harleysville promptly retained GHP Environmental to inspect the

property. On August 16, 2018, GHP Environmental issued its report finding no prevalent smoke odor within the structure and no significant forest fire residue. All samples were at less than one percent for char, ash, black carbon/soot, and carbon black, which is at the limit of detection and should be considered as normal background levels and pose no risk to the building or occupants. Thus, like the insurers in the Palmer and Williamson and Lance and Cox cases Harleysville had legitimate reasons for denying the Plaintiffs' claim for additional damage.

In this case a jury may ultimately disagree with Harleysville's coverage determination. However, at this stage of litigation, the question is not whether Harleysville's coverage determination was correct. Instead, the question for purposes of Plaintiff's bad faith claim and Plaintiff's claim for punitive damages is whether Harleysville issued its denial with a good faith basis to support it. As noted, Harleysville performed an internal investigation into the claim but also hired an independent third party industrial hygienist with expertise in these matters to assist. And it was the findings of this independent expert that were the bases for Harleysville's denial. GHP Environmental found no prevalent smoke odor within the structure and no significant forest fire residue. This result was a confirmation of Defendant's earlier position that the damage to Plaintiffs' building was limited to minor soot and dirt staining of the exterior of the building that could be remedied through pressure washing. While Plaintiffs may disagree with whether that determination was correct, there are legitimate grounds to disagree on whether the building sustained in excess of $350,000.00 in additional damages from smoke. Stated another way, as a matter of law, Harleysville had a good faith basis for its denial of Plaintiffs' claim for additional damages.

13

Therefore, the Court should dismiss Plaintiff's claims for statutory bad faith and punitive damages.

## CONCLUSION

Based upon the foregoing facts and principles of law, Defendant requests that this Court grant its Motion for Partial Summary Judgment and dismiss with prejudice Plaintiffs' claim of bad faith, pursuant to Tennessee Code Annotated section 56-7-105 (Count 2 of the Amended Complaint) and dismiss with prejudice the Plaintiffs' claims for intentional, fraudulent, malicious, and/or reckless breach of contract (paragraphs 48 and 49 of the Amended Complaint).

Respectfully submitted,

RAINEY, KIZER, REVIERE & BELL, P.L.C.

**__s/ Russell E. Reviere_____**
Russell E. Reviere (BPR No. 07166)
N. Mark Kinsman (BPR No. 06039)
Attorneys for Defendant
209 East Main Street
P. O. Box 1147
Jackson, TN 38302-1147
(731) 423-2414
rreviere@raineykizer.com

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing document was forwarded first class U.S. Mail, postage prepaid to:

J. Brandon McWherter
Jonathan L. Bobbitt
341 Cool Springs Blvd, Suite 230
Franklin, TN 37067

Clinton H. Scott
54 Exeter Road, Suite D
Jackson, TN 38301

counselors of record for Plaintiff, and by electronic means via the Court's electronic filing system.

This the 6th day of January, 2020.

<u>s/ Russell E. Reviere</u>